# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff Thomas Johnson's ("Plaintiff") claims against Contemporary Information Corporation ("CIC") are fatally misplaced. Plaintiff applied for a job with a property management company that failed to comply with its statutory and contractual obligations when requesting Plaintiff's background screening report and failed to appropriately consider all of the information provided in that report before rescinding its job offer to Plaintiff. Yet, Plaintiff has elected to sue CIC, which did nothing more than provide a facially-accurate sex offender registry match in response to what it thought was a tenant background screening request. When Plaintiff informed CIC that the property management company had used its tenant screening portal to conduct an employment screening, and that the property management company rescinded Plaintiff's job offer on the basis of a sex offender record that the property management company had every reason to know did not belong to Plaintiff, CIC corrected Plaintiff's report in one day. (Compl. ¶¶ 51-52).

Because the sex offender data CIC provided on Plaintiff's background screening report matched the identifying information provided to CIC, and because the property management company's conduct was an intervening cause of Plaintiff's alleged injury, Plaintiff cannot state a claim against CIC under the Fair Credit Reporting Act ("FCRA") and Investigative Consumer Reporting Agencies Act ("ICRAA"). Accordingly, pursuant to Federal Rule of Civil Procedure 12(b)(6), Plaintiff's claims against CIC should be dismissed, with prejudice.

## BACKGROUND FACTS

On November 9, 2020, Plaintiff applied for a position on the maintenance team of a property management company in the greater Oakland, California area. (Compl. ¶¶ 27–28.) Before offering Plaintiff a position, the property management company conducted a criminal background check on Plaintiff. (Compl. ¶ 24.) The property management company, in violation of the FCRA[1] and its contractual obligations, requested Plaintiffs'

---

[1] *See* 15 U.S.C. § 1681b(a).

*employment* background screening report through its *tenant* screening portal with East Bay Rental Housing Association ("EBRHA"). (Compl. ¶ 50); *see also* a true and correct copy of the full report the property management company requested from EBRHA, attached hereto as Exhibit A.[2]

As a consumer reporting agency, CIC may only provide a consumer report for one of the permissible purposes enumerated under 15 U.S.C. § 1681b(a). As provided on the consumer report at issue, the only certified permissible purpose for background screening reports provided by EBRHA is tenant background screening. *See* Exh. A at 9 ("This report was generated for <u>rental application purposes</u>. This report is confidential and is not to be disclosed except for persons who have legitimate purposes as defined in the Fair Credit Reporting Act and other applicable Federal and State regulations. Neither East Bay Rental Housing Association, nor its sources or distributors warrant such information nor shall they be liable for your use or reliance upon it." (emphasis added)).

On November 13, 2020, the property management company requested Plaintiff's background screening report from EBRHA, which, in turn, obtained Plaintiff's criminal background information from CIC. (Compl. ¶¶ 35, 50.) Not knowing that the property management company misrepresented its permissible purpose under the FCRA or ICRAA to request Plaintiff's background screening report, CIC conducted a search of its criminal and sex offender records database using the identifying information provided to it by EBRHA. This search resulted in a match with an individual on Virginia's sex offender registry based on Plaintiffs first name, last name, age, and prior residence in Virginia. (*See* Compl. ¶ 39; Ex. A.) CIC relayed all information available on the Virginia sex offender registry for the matching individual, including a <u>picture</u> and physical description. (*Id.*) This information was included in the EBRHA report provided to the property management

---

[2] The Court can and should consider a full copy of the report, excerpted in Plaintiff's Complaint at paragraph 39, for the purposes of CIC's Motion to Dismiss, as the full report is incorporated by reference into Plaintiff's Complaint. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998) (superseded by statute on other grounds) (Courts may consider in a motion to dismiss a document not attached to the Complaint "the authenticity of which is not contested, and upon which the plaintiff's complaint necessarily relies.").

1  company. (*Id.*) Above the sex offender registry information, the EBRHA report provided
2  a disclaimer, which reads in part:

> [T]he end user should cross check the applicant supplied information with the date of birth, middle name, physical descriptors and geographical areas where the applicant has lived to determine a positive match. Any criminal records listed herein must be carefully reviewed by the end user of this report prior to making any decision. If you need assistance please call 800-288-4757 x1.

(*Id.*)

The property management company ultimately rescinded Plaintiff's job offer. (Compl. ¶ 46.) Upon information and belief, the property management company did not provide Plaintiff the pre-adverse action notice or opportunity to dispute the conviction record on his background screening report as required by Cal. Gov. Code § 12952. On December 1, 2020, Plaintiff disputed the sex offender match on his background screening report with CIC. (Compl. ¶ 51.) CIC investigated Plaintiff's dispute and responded with a corrected report the next day. (Compl. ¶ 52.)

Plaintiff filed this lawsuit on June 25, 2021 in Alameda County Superior Court, claiming that CIC violated the FCRA and ICRAA by failing to maintain reasonable procedures to ensure maximum possible accuracy of the information on his background screening report. On July 28, 2021, CIC removed this case to this Court.

## ARGUMENT

To make out a prima facie case under 15 U.S.C. § 1681e(b), which requires that consumer reporting agencies "maintain reasonable procedures to ensure maximum possible accuracy" of the information they report, Plaintiff must show that CIC prepared a report containing inaccurate information, and that the inaccurate report caused him to suffer a compensable injury. *Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995) (citing *Cahlin v. General Motors Acceptance Corp.*, 936 F.2d 1151, 1156 (11th Cir. 1991); *accord*, *Erickson v. First Advantage Background Servs. Corp.*, 981 F.3d 1246, 1251 (11th Cir. 2020). California Civil Code § 1786.20(b), the ICRAA provision under which Plaintiff brings his claim, uses identical language to § 1681e(b). Cal. Civ. Code §

1768.20(b) (investigative consumer reporting agency "shall follow reasonable procedures to ensure maximum possible accuracy."); *see, also, White v. RentGrow, Inc.*, No. 3:19-cv-00626, 2021 WL 130586, at *4 (M.D. Tenn. Jan. 14, 2021) (recognizing that 15 U.S.C. § 1681e(b) and Cal. Civ. Code § 1786.20(b) are "parallel" statutes). Accordingly, Plaintiff's ICRAA claim ought to be analyzed in line with FCRA case law interpreting § 1681e(b).

Plaintiff cannot show either element of his claims, as the sex offender match on his background screening report was not, on its face, inaccurate or misleading. Moreover, Plaintiff admits that the property management company, not CIC's criminal records reporting, caused Plaintiff's alleged injuries. Accordingly, Plaintiff's claims against CIC must be dismissed.

## I.　PLAINTIFF CANNOT SHOW THAT HIS REPORT WAS INACCURATE ON ITS FACE.

The sex offender match on Plaintiff's EBRHA background screening report, when coupled with the disclaimer included in the report, was neither inaccurate on its face nor objectively misleading. "[T]o reach 'maximum possible accuracy'" as required by 15 U.S.C. § 1681e(b) "information must be factually true and also unlikely to lead to a misunderstanding." *Erickson*, 981 F.3d at 1252; *see, also, Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1163 (9th Cir. 2009). "[W]hether a report is misleading is an objective measure, one 'that should be interpreted in an evenhanded manner toward the interests of both consumers and potential creditors.'" *Id.*

In *Erickson*, the Eleventh Circuit addressed a similar situation to this matter in which a background screening report incorrectly attributed a sex offender registry match to the plaintiff based on a first and last name match. *Id.* at 1249. The report in question included a disclaimer which stated "[t]his Record is matched by First Name, Last Name ONLY and may not belong to your subject. Your further review of the State Sex Offender Website is required in order to determine if this is your subject." *Id.* The report went on to state that the end user should compare the "'demographic data and available photographs'" when considering the matched sex offender records. *Id.* The court held that, even though the

matched sex offender record did not, in fact, belong to the subject of the report, the report was not inaccurate by the standard of § 1681e(b). *Id.* at 1253. It was true that a sex offender shared the report subject's first and last name, and the report cautioned that the details of the match must be closely examined. *Id.* Moreover, the report was not misleading, because the disclaimer informed the end user that the sex offender record might not belong to the report subject, and that further review was required before the end user could rely on the match. *Id.*

Here, as in *Erickson*, the sex offender record on Plaintiff's background screening report matched his first and last name (plus his age and former state of residence) and the report informed the end user that further review was required before it could act on the sex offender match. As noted above, and as Plaintiff concedes, multiple data points available on the Virginia sex offender registry for the sex offender Thomas Johnson matched Plaintiff's own information. The report does not say that the sex offender Thomas Johnson is the same person as Plaintiff, simply that the identifying information provided matches the information of a particular individual on the Virginia sex offender registry. (*See* Compl. ¶ 39.) Further, the report cautions the end user that, while industry best practices were employed to ensure accurate matches, further review was necessary to confirm that the Thomas Johnson on the Virginia sex offender registry was the subject of the report. To facilitate this review, CIC provided all information available on the Virginia sex offender registry, <u>including a picture of the matched sex offender</u>. (*Id.*) Accordingly, the report was both factually accurate and objectively not misleading. Without an inaccurate report, Plaintiff cannot state a prima facie claim for a violation of § 1681e(b) or the ICRAA.

## II. CIC'S REPORTING WAS NOT THE CAUSE OF PLAINTIFF'S ALLEGED INJURIES.

Even if Plaintiff's report was inaccurate, the unlawful conduct of the property management company that requested Plaintiff's report, not CIC's reporting, was the cause of Plaintiff's alleged injuries. As noted above, EBRHA provides a tenant screening report, not an employment screening report. (Exhibit A, pg. 9). Thus, the *only* FCRA permissible

purpose that EBRHA provides for on its report—and thereby certifies to CIC—is "for rental application purposes." (*Id*.) As such, the property management company misrepresented to EBRHA that it was requesting Plaintiff's background screening report "for rental application purposes" and then improperly used the report for employment purposes.

Had the property management company properly requested an employment screening report for Plaintiff, California law governing the consideration of criminal conviction history in employment decisions requires that:

> if the employer makes a preliminary decision that the applicant's conviction history disqualifies the applicant from employment, the employer shall notify the applicant of this preliminary decision in writing.

Cal. Gov. Code § 12952(c)(2). Following this notification, the applicant:

> shall have at least five business days to respond to the notice provided to the applicant under paragraph (2) before the employer may make a final decision. If, within the five business days, the applicant notifies the employer in writing that the applicant disputes the accuracy of the conviction history report that was the basis for the preliminary decision to rescind the offer and that the applicant is taking specific steps to obtain evidence supporting that assertion, then the applicant shall have five additional business days to respond to the notice. . . . The employer shall consider information submitted by the applicant pursuant to paragraph (3) before making a final decision.

Cal. Gov. Code § 12952(c)(3), (4).

Had the property management company requested Plaintiff's background screening report through an employment screening portal, not only would CIC have been aware that it was providing an employment screening report subject to additional regulations under California law, but Plaintiff would have had ample opportunity to dispute the sex offender match on his report before the property management company could withdraw his offer.

Furthermore, the property management company had ample information, on the face of Plaintiff's report, to see that the matched sex offender record did not belong to Plaintiff. As Plaintiff points out, CIC included a physical description, date of birth, and middle name among the information it pulled from the Virginia sex offender registry that do not match Plaintiff. (Compl. ¶ 39; Ex. A.) The report also included a picture of the sex offender

Thomas Johnson. (*Id.*) The employees of the property management company, some of whom had met Plaintiff in person (*id.* at ¶¶ 30–31), failed to confirm that the person described in the sex offender registry data was not Plaintiff. The property management company, which also had a copy of Plaintiff's driver's license, was in a better position than CIC to know whether the matched sex offender record actually belonged to Plaintiff. The property management company's ability to better evaluate all information before it is why the disclaimer in the report makes clear that further review was necessary before making any decisions based on the sex offender data in the report. The property management company failed to do so.

Accordingly, Plaintiff's alleged injury was directly caused by the property management company's failure to properly request Plaintiff's employment screening report, failure to comply with California law, and failure to recognize, in light of *all* of the information on Plaintiff's report, that the matched sex offender records did not belong to Plaintiff. Plaintiff cannot prove that his alleged injury was caused by CIC's consumer reporting activities.

## CONCLUSION

For the reasons stated above, Plaintiff's claims against CIC should be dismissed, with prejudice.

DATED: August 4, 2021    **FOLEY & LARDNER LLP**
Christi A. Lawson
John J. Atallah

/s/ *Christi A. Lawson*
Christi A. Lawson
John J. Atallah
*Attorneys for Defendant*
*Contemporary Information*
*Corporation*